Reasonable jurists reviewing the transcripts of the interrogations here could not conclude that officer Carrillo clearly informed Rivas that he had the right to remain silent or that anything he said could be used against him as Miranda requires nor could reasonable jurists conclude that the statement its burden of showing that Rivas understood and we're making a culpatory statements. Therefore, 2254 D does not bar relief and the court should grant relief on de novo review. I'd like to discuss the deficient. We're not going to concede that this is a review. We satisfy the ADPA under D1 and D2. And once we do that under Panetti and other cases like it, the court gets to review de novo. So the ADP does apply. I'm arguing that we satisfy it. But that builds in the same standard. I mean, you're still going to have to get over the unreasonable standard. We do. All I'm trying to say is that once we do that, the court is allowed to review the question de novo. That's all I'm trying to say. There are two interrogations here on the same day. Miranda warnings were given at the first interrogation. The two warnings appear in our opening brief at page 10. And I would like to quickly read them because they're so important to our case. Midway through page 10, we have the first advisement. The officer says, okay, okay, so you have the right not to say anything. You do understand. Revis, silence. Officer, yes or no. Revis, uh-huh, yes, if I can't say anything. Officer, see, no, okay, you have, you have the, you have rights, okay. I'm going to explain to you the rights you have. Okay, so when I, I ask you, hey, you have the right not to say anything. Okay, you have the right not to say anything. Do you understand? Revis, you will be telling me. Next page. Officer, yes. Revis, okay. Officer, yes or no. You do understand. Revis, silence. Officer, yes. Yes or no. You have to say yes or no. Revis, yes. This warning did not clearly inform Revis of the right to remain silent. In fact, those words remain silent and are not used. And only after being told that he had to say yes or no does Revis say yes. Do you think it cuts against you that there were two interrogations, and then your client wanted to talk in the patrol vehicle, and the officer said, no, wait until we get to the other location, and then didn't, you know, so then re-advised, right? He was not re-advised when they went to the jail. There were only one set of warnings, and that was the first set given at the first interrogation at the house. So the fact that the officer said, well, just wait until we get over there, does that, you know, I mean, does that kind of cut against you, though? I mean, the officer wasn't really trying to push to talk to him. He wanted to get to the other location, and your client on his own said, well, yeah, I really kind of want to tell you everything or whatever, right? I think theoretically it could cut against this, but it doesn't here because the warnings were inadequate, and there's no showing that he understood his rights and entered a valid waiver. A court can, through a client's, I'm sorry, a defendant's conduct, imply a waiver, but not when there's a showing of lack of understanding, and the burden is on the state to show that, and they did not here. The second warning is linked to the first and is important because it advises the accused that the consequences of not remaining silent, and that warning is quick, and it just follows here in the middle of page 11. The officer says, okay, what you say today can be used on, against you in, in a court, do you understand? Revis, no. Officer, okay, you have, what you say today with us, with me, can be used in, in, against, against the court in, in the court, okay? So each, each time you say something that can be used in court, okay, do you understand? Revis, uh-huh. Officer, yes or no. Revis, no answer. Did your client ever ask the officer to elaborate on anything? You know, I'm, I'm not sure. He, he had several express, express times where he said he did not understand. I think, and particularly one at the end where the officer basically says, hey, if you want to, if you're denying this and want to talk, you should talk to somebody, do you understand, and he says not very well. So he, uh, several times clearly expressed his lack of understanding and then the officer does not, uh, follow up to further explain. I'm, I'm a little bit confused too that did, did Carrillo testify that at the preliminary hearing that Revis said he understood that any statements he made could be used against him in a court? What did, what did Carrillo testify at the preliminary hearing? Your Honor, I'm afraid I don't, I don't remember his testimony at the preliminary hearing. I do remember it at the hearing right before the start of trial on the admissibility of the statement, the Miranda hearing, and there he testified that he felt that Revis did understand what he was saying and that he always understood him. And I believe the record refutes that because when you look at the transcripts, uh, you will see numerous times where, uh, Revis gives an answer and then, uh, shows that he's not understanding and then Carrillo follows up. Well, so did Carrillo ever say, did Carrillo say to him, if you don't understand something, tell me? Did he, was that part of the warning? I do not recall. It seems to me it was, and I, it seems to me that your client never took him up on that invitation, but I'll ask the government when it's their turn. Well, as far as, um, this, uh, burden of proof on showing that the accused understood his rights and knowingly and intelligent, uh, intelligently waived them, that burden is on the government and the state court here unreasonably concluded that the state had met that burden. Significantly here on the second warning, uh, there is never an affirmation by Revis that he understood that, that second warning. Uh, he never answers the question, yes or no, and then the, the officer just moves on to the third and fourth warnings. This case is a lot like Duty v. Ryan where an en banc panel of this court ran into belief on a Miranda claim under the ADPA because the transcript of the interrogation showed the warnings to not reasonably and clearly informed, uh, their witnesses. It was the right to counsel. Here it's the first two warnings. Uh, moving on to waiver, validity of waiver depends on the particular facts and circumstances of the case, including the background experience and conduct of the accused. And the facts here are unlike many cases finding a waiver. Revis did not make an express waiver. The officer did not ask him to sign a form acknowledging a waiver. The officer never asked him if, having been advised of his rights, he wished to waive them and speak to him. Instead, as the officer testified at the Miranda hearing, once he finished with the warnings, he just lost, launched into his questions. Uh, we have no implied waiver either. Revis's lack of understanding leaps off the pages of the transcripts. There's a lot of silence, ambiguity, and some express statements of lack of understanding. He never affirmed he understood the second warning. And Revis testified at the Miranda hearing that he was born in Guatemala, he completed only the sixth grade, and he could not read English. Uh, Bergouis, the 2010 U.S. Supreme Court Miranda case. Where in the transcript does it indicate that Revis was having trouble understanding Carrillo? I'm, I'm, excuse me, Your Honor. I'm sorry, I didn't hear you. Where in the transcript does it indicate he was having trouble understanding Carrillo? I'm not, his question, his answers seem to be responsive. Uh, he testified, Mr. Revis testified at the, um, at the Miranda hearing that he, that he had trouble understanding, uh, the officer. Your Honor, unless there are further questions, I see I have a minute and a half left. I'd like to reserve the balance of my time. Thank you. Good morning. Good morning, Your Honors. May it please the Court. Deputy Attorney General Meredith White on behalf of Respondent. Can you speak up a little? Yes, of course. It's not often I'm accused of being too quiet, so, um, but yes, I'll, I'll start with. Use your outside voice. I'll start with Your Honor's question, uh, regarding whether Carrillo asked or, or told Revis that he could ask for further clarification. And the record does affirmatively demonstrate that he did say that. That's at page 89 of the excerpts of record. He says, if you don't understand me, I'll explain further. Okay? And so throughout the questioning, uh, Carrillo attempted to confirm that Revis was understanding each right as he read them to him, and to get Revis's affirmative answer that he understood what was being said to him. Um, in addition to that, this case is governed by AEDPA. And I want to, um, make that absolutely clear. An appellant has not surmounted the hurdle of demonstrating that the State Court's resolution of the claim was unreasonable, either as an application of law or an unreasonable, based on an unreasonable determination of the facts. And because of that, there's no reason for this Court to go to the next step, which would be de novo review. So how do you, what if, under AEDPA review, what, how do you look at the situation that Mr. Revis wanted to talk to the officer again in the patrol car after the initial conversation and how that was handled? What, how would you fit that into the factual? I think it demonstrates that Revis understood he had a choice and an option to speak, because at the conclusion of the initial, um, interrogation at his home, once he's in the car, he was the one who initiated the second conversation, which demonstrates that he understood it was his choice to speak or not to speak, which again confirms that Carrillo's warning at the very beginning of the interview that he didn't have to say anything was sufficient to inform Revis that he had a right to remain silent. Um, appellant takes issue with the fact that the word silent was never used, but the word silent is not a necessary legal requirement to communicate that right. The, the standard under Supreme Court precedent is whether or not the officer, um, communicated the substance of the rights to the defendant, uh, not whether he used specific words or, um, read exactly from his field notebook. Um, and indeed here, Carrillo told Revis, you do not have to say anything. That's the functional equivalent of you have the right to remain silent. I'd even argue that it's perhaps clearer to say you do not have to say anything to somebody who doesn't have a familiarity with sort of legal jargon than to say you have a right to remain silent. Um, Miranda itself does not require even the word silent to be spoken. Miranda itself says the suspect has to be informed of his right against self-incrimination. Uh, it's sort of how we communicate to a suspect what that means. And, and that means in essence, you don't have to give a statement and you don't have to say anything. Uh, Carrillo's use of that phrase in this context was sufficient to communicate to Revis that he had the right to remain silent. Let me ask you a question, if I may, regarding a portion of the transcript that, um, counsel, opposing counsel read just a few minutes ago, if you could get to it. It's a Carrillo asking, he says, sir, no, okay, you have, you have the right, you have the right, okay. There's a little dialogue there. I'm, I'm going to explain you the right you have. Okay, so, when you, when I, and then he asks, I ask you, and then in quotes, have you the, hey, you have the right not to say anything, period. Okay, you have the right not to say anything. Do you understand? Now, what is he, then, then, then, uh, Revis answers a question, erases a question, I'm sorry. And it, it appears to me he's raising a question, uh, having to do with, uh, the duty of the officer. He says, you will be telling me, he's asking him that, aren't you going to be telling me when to, I can say nothing? Isn't he asking him that based on the question, a statement made by Carrillo earlier? Hey, you have the right to not to say anything. And he said, you will be telling me. Are those two things related, I guess is what I'm asking. I do think they're related, but I think Revis's question actually refers back to Carrillo's first statement, not his second statement. And I think what's, what's difficult about reading a cold transcript is just this, that, you know, the two of us can look at exactly the same words on a page and come to different conclusions as to what they mean. But that's what we have. That's true. But that the trial court, the state court in this scenario had not just this transcript, but it had the live testimony of Carrillo and it had the live testimony of Revis. And so to the extent that, um, a court was in a better position to make credibility determinations or to, you know, inform the transcript, it would have been the state trial court because that's the only court that got live testimony from both people. The way I read that is Carrillo says, no, okay, you have rights. Okay. I'm going to explain to you the rights that you have. And then he says, okay. So when I ask you, hey, you have the right not to say anything. That means you have the right not to say anything. Do you understand? And then Revis says, you'll be telling me basically sort of a confirmatory. I get it. You're telling me what my rights are. And so again, like these might be different inferences that can be drawn from the cold record, but under an AEDPA standard of review, it's quite clear that the state courts are entitled to deference, that those inferences can be drawn in favor of the judgment. Let me ask you this. You don't discuss harmlessness in your brief. So are you conceding that if a Miranda error occurred here, it's not harmless? Yes. I think we would concede that if the statements were inadmissible, I don't think that the state can meet its burden of demonstrating harmlessness under Chapman. Or under Brecht, excuse me. But again, under AEDPA deference, I don't think there's any reason to get there. I noticed that there was not a double-barreled argument. And I think also in the argument when the case was being tried, the prosecutor said the confession is the best part of the case. I don't think there's a good faith argument that the confession wasn't an important piece of evidence. And in a case like this, it often comes down to sort of the confession, coupled with how it meshes with the victim's statements. So yes, to answer your question, we did not make a harmlessness argument, and I don't intend to throw one at you today for the first time. But moving back to whether or not the statements were admissible and the state court's determination of that Miranda issue, appellant has not demonstrated that the state court's resolution of this claim was unreasonable under AEDPA, and thus he's not entitled to habeas relief. I want to talk briefly about the second warning, which is whether or not Carrillo informed Revis that the statements could be used against him in court. And the appellant's argument essentially faults Carrillo for leaving out that phrase, against him. When read in context, the first description he gives of that warning does include the phrase, against him. Revis says he doesn't understand, so he goes on to explain further. And the importance of that warning, as explained in Miranda itself, is to inform the suspect about the consequences of foregoing their right to remain silent, and in addition to that, to inform them that they are involved in a phase of the adversary system, and that is to make sure that the suspect understands the police officers are not there on his behalf, and that, again, he's in a phase of the adversary system, and in this particular situation... We make of the fact that there's not much of a response. I mean, according, granted, this is a translated version, but he seems to answer the question, do you understand, uh-huh, and the officer says yes or no, and there's a blank, and the officer goes on. And I think, again, the state courts concluded that that uh-huh response, when reading the entire transcript, was an affirmative response, and the way they reached that conclusion... The officer followed it with yes or no. And presumably, and as I've argued in our briefing, he got some sort of affirmative indication, which is why he moved on, because in every other instance in this interview, when he did not get an affirmative indication of an understanding, he went on to explain further, but even without that, we have that uh-huh, and we have the state court's determination that an uh-huh means yes when Revis uses it, and he even says that. At the very beginning of his interview, he uses uh-huh, and the officer asks him, see, see, like, yes, is that a yes, and he says yes. So he confirms at the beginning of the interview that when he says uh-huh, it means yes. That's consistent with the rest of the interview, where he, again, relies on that phrase as an affirmative response. So the state court's resolution of that issue is a reasonable determination of the facts, and, again, doesn't overcome the hurdle of AEDPA deference. In addition to that... When he wanted to talk to him, he was on his way to jail. It doesn't mean that he thinks that the officer was on a friendly trip, if you're on your way to jail. Right, that's correct. I think at that point, he would certainly be aware that he's involved in a phase of the adversary system. He'd been handcuffed and arrested and placed in the back of the cruiser. Even before that, two uniformed officers showed up at his house at 1040 at night. They were driving marked police cars. He testified that he was nervous, and he testified, or excuse me, the transcript reflects that at the very beginning, he says, I've never had problems like this. So it clearly indicates that Rivas understood at that point in time that the officers were not there on his behalf and that he was involved in an adversary phase of the system. All of this is to say that the record supports the state court's determination that Carrillo sufficiently advised him of the consequences of foregoing his right to remain silent. In addition to that, the state courts reasonably determined that he understood those rights based on the record and based on their resolution of disputes in the facts, and based on their resolution of credibility determinations. Most importantly, Rivas' testimony at the Miranda hearing, where he essentially said he didn't remember anything, the trial court rejected that and said it didn't believe that he didn't understand what was being said to him, and the state appellate court adopted that factual finding as is typical in these situations. Yes, with that, unless the court has any further questions, we'd submit. Okay, thank you. All right, so why don't you give him an extra minute since I went over time. So now you're up to two and a half minutes. Thank you, Your Honor, I appreciate it. Getting back to talking in the patrol car, I think as Judge Hoyt noted, Rivas had previously said, you will be telling me regarding the right to remain silent, and it shows he didn't understand he had been supposedly informed of the right to remain silent. So the warnings were inadequate by the time he's in the patrol car and were insufficient to inform of those rights or for the court to reasonably conclude he had waived them. I'd like to talk for a second. Let me ask you a question. Do you agree that if you can't get de novo review, that you are not going to get any relief in this for your client? 2254D applies to our claim, and if we can't satisfy 2254D, then we're not going to win the case. I think that's great that both of you said on either end what it has to be to prevail. We appreciate that you focus on that. Thank you. Of course, once we surmount it, you do review de novo, so we hope we get there. But about uh-huh, always meaning yes, or an affirmative response, that is not a reasonable conclusion looking at the entire transcript. And I just want to cite a couple other pages in the excerpts of record to try to make this point quickly. Well, uh-huh as opposed to uh-uh. Uh-uh is no. Uh-huh is yes. Tone means a lot, and the trial judge here did not listen to the tapes, and the tapes were in Spanish. He just had the transcript like we do. But if we look at excerpts of record, page 218, for example, at the bottom, there's an answer to a question where Reva says, uh-huh, but I mean no. So there, uh-huh is part of an answer saying no. We also have the next page, he says, uh-huh, yes. Now, yes is superfluous if uh-huh always means yes. And looking quickly at page 262 and 263 of the excerpts, he says at the bottom there, uh-huh, and then the officer restates the question, yes or no, and he gets a yes. The importance there is that's the second transcript, and it's toward the end, and the officer is still not accepting uh-huh as meaning yes, because again, like we saw with our earlier one, there's a follow-up question, do you mean yes or no. So I think it's unreasonable to conclude that uh-huh means yes invariably in this case. Finally, I'd just like to say there's talk about a credibility finding here by the trial judge, and in fact there was no such finding, and the court of appeal unreasonably determined that there was. All the trial judge said was that Reva's testimony was not helpful because he was unable to recall things, and the district attorney agreed and said that the only real evidence was the transcript in Officer Carrillo's testimony. And this is in the excerpts of record around pages 305 to 319. So there is no adverse credibility finding to defer to by the state court of appeal or by this court. I see that I'm over time. Thank you, Your Honor.
judges: Clifton, Callahan, Hoyt